[Crim. No. 525.    Third Appellate District.—July 31, 1920.]

## THE PEOPLE, Respondent, v. JOE FUSKI, Appellant.

[1] CRIMINAL LAW—PIMPING—ESSENTIAL ELEMENTS. — The elements or conditions that must exist to constitute the crime of pimping denounced by the act of the legislature passed in 1911 (Stats. 1911, p. 10) are, the defendant must be a male person; he must have knowledge that a certain female is a prostitute; there must be earnings from her prostitution; and the defendant must derive his support or maintenance in whole or in part from such earnings, knowing them to have been the proceeds from prostitution.

[2] ID.—SEX OF DEFENDANT—SUFFICIENCY OF INDICTMENT.—In a prosecution for the commission of such crime of pimping, the indictment is not fatally defective in failing to contain an allegation that the defendant is a male person.

[3] ID.—EVIDENCE — ACCOMPLICE — QUESTION FOR JURY. — In such a prosecution, where it cannot be said as a matter of law that a certain male witness for the prosecution participated or was concerned in the commission of the particular offense charged against the defendant, the trial court is warranted in declining to give an instruction that such witness was an accomplice, but may properly leave it for the jury to determine under general instructions on that subject.

[4] ID.—VARIANCE BETWEEN INDICTMENT AND PROOF—WAIVER OF OBJECTION—APPEAL.—The defendant in a prosecution for the crime of pimping may not on appeal from the judgment of conviction for the first time make the point that the evidence in the case taken most strongly against him goes no further than to show that the money paid to him by the prosecutrix "was money charged her by the keeper and manager of a house or place where prostitution was practiced and allowed," and that this is an entirely distinct offense from that charged in the indictment, where no such objection was made at the trial and the trial court was not requested to instruct the jury to acquit on that ground, the case having been tried upon the theory that this particular condition was covered by the indictment.

[5] ID.—SEX OF PARTIES—EVIDENCE.—In a prosecution for the crime of pimping, the contention that there is no evidence that the defendant is a male person or that the prosecuting witness is a female person is without merit, where both such parties were before the jury and from the use of pronouns and otherwise their sex clearly appeared.

[6] ID.—QUALIFICATION OF JUROR—PROVINCE OF TRIAL COURT.—Where a juror on his *vior dire* examination states at first that he has

a definite opinion in the case, which it will take evidence to re-
move, but subsequently declares very clearly that he will entirely
disregard that opinion and be guided solely by the evidence in
the case, it is for the trial court to determine whether he is a
qualified juror.

[7] ID.—SUPPORT OF DEFENDANT FROM EARNINGS OF PROSTITUTE—
SUFFICIENCY OF INDICTMENT.—In a prosecution for the crime of
pimping, it is not necessary to allege in the indictment whether
the defendant "wholly" or "in part" derived support and mainte-
nance from the prostitution of the woman named therein, it being
sufficient in this regard to allege that the defendant "did then
and there, willfully and unlawfully, feloniously and knowingly de-
rive support and maintenance from the earnings and proceeds" of
the prostitution of such woman. (Opinion of supreme court on
denial of hearing.)

APPEAL from a judgment of the Superior Court of Sac-
ramento County. Malcolm C. Glenn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Martin I. Welsh for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Dep-
uty Attorney-General, for Respondent.

BURNETT, J.—Appellant was convicted of the crime de-
nounced by an act of the legislature passed in 1911 (Stats.
1911, p. 10.) The charging part of the indictment is as
follows: "The said Joe Fuski on the —— day of November,
A. D. 1919, at the County of Sacramento, in the State of
California, and before the finding of this indictment, did
then and there knowing one Esther Greely, a female person,
to be a prostitute, did then and there willfully and un-
lawfully, feloniously and knowingly derive support and
maintenance from the earnings and proceeds of the prostitu-
tion of said Esther Greely, she the said Esther Greely
being then and there a prostitute." There was no demur-
rer to the indictment, but a motion was made in arrest of
judgment on the ground that the indictment is fatally
defective.

The points made on the appeal from the judgment and
the order denying the motion for a new trial are: "1. That
the matters alleged in the indictment do not constitute a

crime or public offense. 2. That the evidence does not sustain or justify the verdict of conviction. 3. That the trial court erred in denying the defendant's motion for change of venue. 4. That the trial court erred in overruling the defendant's challenge to the talesman Benning. 5. That the court erred in refusing to permit Joseph E. Piepher, court reporter, to furnish defendant for the purpose of cross-examination, a transcript of the statements made by the prosecuting witness in the office of the district attorney. 6. The court erred in its instructions to the jury. 7. The court erred in refusing instructions requested by defendant."

[1] As stated by appellant, the elements or conditions that must exist to constitute the offense are: (1) The defendant must be a male person; (2) he must have knowledge that a certain female person is a prostitute; (3) there must be earnings from her prostitution; (4) the defendant must derive his support or maintenance in whole or in part from such earnings, knowing them to have been the proceeds from prostitution. These essentials, it is claimed, should, by suitable averment, appear in the indictment. [2] Herein, the first objection is that it is not alleged that defendant is a male person. The attorney-general answers that the fact is sufficiently implied in the use of the name "Joe." The authorities, though, including at least two decisions in this state, are generally opposed to that view. (*Ellis* v. *State*, 65 Tex. Cr. 480, [145 S. W. 339]; *People* v. *Martin*, 180 Ill. App. 578; *People* v. *Carroll*, 1 Cal. App. 2, [81 Pac. 680]; *People* v. *Allison*, 25 Cal. App. 746, [145 Pac. 539]; 22 Cyc. 343.)

It is manifest, however, that there is a distinction as to the importance and necessity of such allegation between the case of the defendant himself and that of a third party. The main purpose of requiring the various elements of a crime to be set out in an indictment or information is to enable him to suitably prepare his defense. He is presumed to be innocent and, therefore, to have no independent knowledge of the facts that constitute the offense. For instance, if the crime be of such character that it can be committed only against the person of a male being or of a female, of course the sex of said third party must plainly appear. But herein the allegation that the defendant is a male person would be of no aid to him, since that is a

matter peculiarly within his own knowledge, and, whether guilty or innocent, he is equally apprised of his sex. From a practical standpoint it would be just as important to inform him that he is a human being as to allege that he is a male person. No doubt, indeed, he would be quick to resent the imputation that he is not a human being or that he is a female.

The other objections to the indictment are that it fails "to allege whether the defendant *in whole or in part* lived or derived his support or maintenance from the earnings or proceeds of the prostitution; also what sum or sums of money were received by him from such source for such purpose, and, also, that defendant knew when he applied the money to his support and maintenance that it was derived from the earnings and proceeds of the prostitution."

It may be conceded that the indictment is somewhat defective in all these respects, and that more care should have been exercised in its construction, but we are satisfied that it is not fatally objectionable and that no prejudice resulted to appellant from any of the imperfections in said pleading. We may add that the absence of a specific allegation as to whether defendant was *wholly,* or only partially, supported by said earnings and as to what sum of money he thus received constitutes the ground simply for a special demurrer and was therefore waived. As to his knowledge that the money he obtained was derived from said source, while it is true that an explicit allegation to that effect would be desirable, yet no one would have any difficulty in understanding from the indictment as a whole that such was the intended charge of the pleader. The case is one of an imperfect allegation of a material fact rather than of a total failure to set forth an essential element. (*People* v. *Griesheimer,* 176 Cal. 44, [167 Pac. 521].)

Finally, as to all the criticisms of the indictment, the suggestion may be made that any defect therein was rendered innocuous and is shown to have been without prejudice by the evidence at the trial. (*People* v. *Bonfanti,* 40 Cal. App. 614, [181 Pac. 80]; *Reid* v. *Superior Court,* 44 Cal. App. 349, [186 Pac. 634].)

It is not an unfair inference from the evidence that appellant derived his support, in part at least, from the illicit earnings of said prostitute. Various circumstances

detailed by the witnesses indicate such to be the fact. There is also the positive testimony of one Joe Costello, as follows: "Q. What, if anything, did Esther do when Joe and she and you went together in the front room? A. Well, one time she set down there on the bed and played with the dog, and another time she came in and gave him fifty cents. Q. Gave who fifty cents? A. Joe Fuski. Q. That is the defendant here? A. Yes, sir. Q. What did Joe Fuski do with the fifty cent piece? A. Put it in his pocket." It also appears from the testimony of this same witness that a portion of said earnings was placed in a certain trunk and a part of that money was delivered to appellant who "spent it buying something to eat and gambling."

[3] True, appellant claims that Costello was an accomplice and that his testimony, therefore, required corroboration. But it cannot be said as a matter of law that he participated or was concerned in the commission of the particular offense charged against appellant. At least, it was a debatable question and proper to be submitted to the jury. (*People* v. *Lawlor*, 21 Cal. App. 63, [131 Pac. 63].) Unquestionably, the witness appeared in rather an unenviable light. He would not be selected as a model for a Sunday-school class, but even men of the most loathsome character sometimes tell the truth, and we can see nothing incredible in his statements. The jury undoubtedly believed him, and they were apparently justified in doing so. In this connection, we may state that the court was warranted in declining to give an instruction that Costello was an accomplice, but properly left it for the jury to determine under the general instructions given on the subject.

[4] Another claim of appellant is that "the evidence in the case taken most strongly against defendant, goes no further than to show that the money paid to him by the prosecuting witness Esther Greely was money *charged her* by the keeper and manager of a house or place where prostitution was practiced and allowed," and that this is an entirely distinct offense from that charged in the indictment. Appellant concludes that there was a fatal variance between the proof and the averments of the pleading, and the judgment must be reversed for that reason.

As to this contention it may be said that no such objection was made at the trial nor was the court requested to

instruct the jury to acquit on said ground. In fact, the case was tried upon the theory that this particular condition was covered by the indictment and it is now too late to make the point. Moreover, the evidence introduced by the defendant was to the effect that he was not the manager or keeper of the house and hence there was a conflict as to that question. Besides, the gist of the offense was in receiving such money for his support, knowing the source from which it came, and the fact, if it existed, that he was the keeper or manager of the house was a mere additional incident not necessary to be alleged.

[5] Appellant is clearly in error in the claim that "there is no evidence that defendant is a male person nor that Esther Greely is a female person." In the first place, the jurors had before them these parties, and from their appearance, no doubt, their sex could be determined. (*People* v. *Goldenson,* 76 Cal. 328, [19 Pac. 161].) Moreover, it does appear very clearly from the use of pronouns and otherwise that *Joe* was and is a male, and *Esther* a female. Counsel for appellant will not resent the kindly suggestion that his talents might be better employed than in urging a point of so little merit.

Appellant complains of the action of the court in refusing to give certain proposed instructions, but after an examination of the charge we are satisfied that every principle of law necessary for the enlightenment and guidance of the jury was clearly and accurately presented by the trial judge. The court could not be expected to indulge in "vain repetitions" in directing the jury. If the defendant proposes an appropriate instruction it should be given, of course, but not necessarily in the exact language as proposed. To show how insubstantial is the criticism of appellant in this respect, we notice that he complains because of the court's refusal to instruct that the prosecution must prove that the defendant was a male person and that he derived support in whole or in part from money received from said Esther Greely, and yet we find this direction to the jury: "The court therefore instructs you that before you can find the defendant guilty of the crime charged in the indictment herein you must be satisfied to a moral certainty and beyond a reasonable doubt:

"1. That the defendant is a male person and that Esther Greely is a female person;

"2. That the said Esther Greely was at the time and place as charged in the indictment a prostitute;

"3. That the defendant at the time and place as charged in the indictment knew of his own personal knowledge that the said Esther Greely was then and there a prostitute;

"4. That the said defendant did, as charged in the indictment, derive support or maintenance in whole or in part from the earnings or proceeds of the prostitution of such prostitute and that the defendant knew as charged in the indictment that such earnings or proceeds so received by him from her were the earnings or proceeds of the prostitution of such prostitute and

"5. That the defendant used the same for his own support or maintenance, either in whole or in part, all as charged in the indictment herein.

"Should you entertain a reasonable doubt as to all or any of the matters set forth in the indictment, or in this instruction set forth, then you will return a verdict of not guilty."

[6] The court committed no error in overruling the challenge to the juror Benning. While he at first stated that he had a definite opinion in the case, which it would take evidence to remove, he subsequently declared very clearly that he would entirely disregard said opinion and be guided solely by the evidence in the case. It was for the trial court to determine whether he was a qualified juror. (*People* v. *Ryan*, 152 Cal. 371, [92 Pac. 853].)

There is no reason to hold that the court abused its discretion in denying the motion for a change of venue. In making its ruling the court said: "Now, the motion will be overruled temporarily, and the right to renew will be given at any time if, during the subsequent impanelment of the jurors it should appear that the defendant cannot have a fair and impartial trial in this county." It may be stated that a large number of affidavits and of counter-affidavits was filed on the hearing of the motion, upon which conflicting opinions might be based as to the probability of securing a fair jury for the trial. But the record of the impanelment of the jury shows beyond question that no greater difficulty than ordinarily occurs was encountered

and that a fair and impartial jury was selected. In view
of all the circumstances, the court was entirely justified in
denying the motion. (*People* v. *Kromphold,* 172 Cal. 512,
[157 Pac. 599].)

The last point made by appellant is that the court should.
have required the official reporter to deliver to defendant's
counsel the transcript of his notes of certain statements
made in the district attorney's office by said Esther Greely.
The situation is similar to that discussed in *People* v. *Glaze,*
139 Cal. 158, [72 Pac. 965], and *People* v. *Emmons,* 7 Cal.
App. 690, [95 Pac. 1032], and it is sufficient to refer to
those decisions for an answer to appellant's contention.

Finally, it may be said that the importance of a careful
examination of the record to ascertain if the defendant was
justly convicted is emphasized by the nature of the charge
made against him. The crime itself bespeaks such bestial
depravity that even a formal accusation by a grand jury is
likely to excite the aversion of the community against the
person thus accused and to make it difficult for him to
secure a fair trial. With this possibility in view we have
given the proceedings very earnest attention and we have
no hesitation in saying that no right to which defendant
is entitled under the law was invaded; that the trial was
conducted decorously and legally, and that the verdict of the
jury is amply supported.

The judgment and order denying the motion for a new
trial are affirmed.

Nicol, J., *pro tem.,* and Hart, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied
by the supreme court on September 27, 1920, and the fol-
lowing opinion then rendered thereon:

THE COURT.—The application for a hearing in this
court after decision by the district court of appeal of the
third appellate district is denied.

[7] We desire to say in addition to what is said in the
opinion that we think that it was entirely unnecessary to
allege in the indictment whether the defendant "wholly"
or "in part" derived support and maintenance from the

prostitution of the woman named therein, and that it was entirely sufficient in this regard to allege that the defendant "did then and there, willfully and unlawfully, feloniously and knowingly derive support and maintenance from the earnings and proceeds," etc. On the question of the knowledge of the defendant as to the source of the moneys we entirely agree with the district court of appeal that the case at most is one of an imperfect allegation of a material fact rather than of a total failure to set forth an essential element.

All the Justices concurred.