[Crim. No. 7749. Second Dist., Div. One. Feb. 7, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. OSCAR B. ROMO, Defendant and Appellant.

Jack H. Berkowitz, under appointment by the District Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with a violation of section 266h, Penal Code and one prior felony conviction. He pleaded not guilty and denied the prior, waived his right to a jury trial and submitted the cause on the transcript of the preliminary hearing. The trial court adjudged defendant guilty, found the prior to be true, denied probation and sentenced him to the state prison. From the judgment defendant appeals.

At the preliminary hearing the People offered the testimony of five witnesses; and received in evidence at the trial and marked Exhibit 1, were certified copies of records in case No. 175216 showing defendant's prior conviction of robbery in the first degree, a felony, on October 27, 1955, in the Superior Court of Los Angeles County. The defendant neither testified on his own behalf nor offered a defense.

Around 9 p. m. on January 21, 1961, the defendant, who

was seated in his automobile at the side of the road near the Triple "S" labor camp in Oxnard, called out to one Rodriquez-Padron, a Mexican national, and asked him if he "didn't want meat," an expression referring to intercourse. Padron asked the price, defendant told him $4.00; at his invitation Padron got into the car in which were two other men, and defendant drove them to a place on the other side of the river (El Rio) where a truck was parked, "where the lady was." According to Padron, defendant said "he was taking us to a woman" and when they arrived he told them, "Here, she is . . ."; referring to Padron defendant said: "You get off and let's have the money." Padron testified that he then gave $5.00 to defendant who returned $1.00 to him, and he went to the truck where he had intercourse with a woman whom he identified as Barbara Holmes and that he "was the first one that went with her." After Padron left the truck defendant called to him, "come here and wait in the car"; as he did so defendant said, "Come on, another one of you guys, come on," whereupon another man went into the truck. While he was sitting in the car the police arrived.

Nicholas Gonzales-Martinez, testified that he saw defendant that night in a car near the Triple "S" camp; that defendant asked him if he "wanted to see a gal . . . to go with him over to the gal"; that defendant asked him for $4.00; that he knew neither him nor the woman but went with defendant in the car; and that he later paid $4.00 to defendant and was waiting in the car where police arrested him.

Barbara Holmes, married to another man, claimed to be the common-law wife of defendant; she had known defendant about three years and was staying in Oxnard with him. She testified that on the night of January 21 she had sexual relations with Padron and another man, "because we (she and defendant) needed the money . . ., he is going for an operation . . ., he has been ill and hasn't been able to work . . . we were trying to get some funds to carry us over." When asked whose idea it was she answered, "I guess we're [referring to herself and defendant] both to blame"; asked if she and defendant discussed obtaining money in this way, she answered "no," but to questions whether she ever talked with him about having sexual relations with others and whether she was to receive any money therefor, she made no response. She further testified that she was taken by defendant in their car to the place where she had relations with the two men; that she was waiting alone in the back of the truck for them; that

defendant brought the men to her; that she knew why they were there although she had never seen them before; and that she received no money and does not know whether anyone else did. After having relations with the two men she was sitting in the truck alone waiting for the third man when officers arrested her. Asked on cross-examination if she had ever done anything like this before, she said "no," this was the first time, that she is not a prostitute, and that this was "the first time he's ever done anything like this."

Officer Papageorge testified that he and two other officers, checking labor camps for suspicious activity, first saw defendant in a car parked at the Triple "S" camp on January 21 around 9 p. m. He observed several Mexican nationals around the car; defendant appeared to be talking to them. Defendant then drove three of them toward Oxnard Boulevard; five or ten minutes later the officer saw him again in El Rio drive into a driveway at 2640 Cortez Street. After approximately 10 minutes the officers went into the driveway; two walked over to a 1950 green Chevrolet pickup truck parked in front of an abandoned garage and conversed with defendant and the Holmes woman; Papageorge talked to the Mexican nationals seated in a station wagon.

 It is appellant's first contention that the accusatory pleading is so defective that it does not confer jurisdiction on the superior court to hear the cause as a felony; he argues that since the statement of the offense omits the word "compensation," the information does not charge a violation of section 266h, Penal Code (at most alleging soliciting, a misdemeanor in violation of § 318), and fails to set forth the public offense sought to be charged therein. Inasmuch as the information at the outset specifically charges a "violation of section 266 (h) of the Penal Code" a felony, thereby directing conferring jurisdiction on the superior court to hear the cause, since the purpose of an accusatory pleading is to notify the accused of the charge he is to meet at the trial, and from appellant's failure to assert that the alleged defect in the statement of the offense misled him or that at any time he was unaware of the nature of the offense charged as to prevent him from properly preparing his defense or deprive him of a future plea of jeopardy, it is readily apparent that his argument is directed solely to an unjustified plea to reduce the charge from a felony to a lesser offense that he may be returned to the lower court for sentence as a misdemeanant. His position is not well taken for besides ignoring the allegation in the information directly

charging him with a felony, he overlooks the purpose of an information, the precise wording of the statement of the offense specifically describing the same as a violation of the latter portion of section 266h, and the fact that no reasonable person could read the information and fail to know that the accused was charged with the crime of soliciting for compensation in violation of section 266h.

The information accused defendant "of the crime of violation of section 266(h) of the Penal Code in that on or about January 21, 1961, in the County of Ventura, State of California, knowing Barbara Doris Holmes to be a prostitute, he did solicit for her." In pertinent part section 266h reads: "Any male person who, knowing a female person is a prostitute . . . who solicits or receives compensation for soliciting for her, is guilty of pimping, a felony." The information does not use the word "compensation" in the statement of the offense; thus, says appellant, it fails to allege a felony and charges a misdemeanor under section 318, Penal Code. On the other hand, section 318 provides that "Whoever, through invitation or device, prevails upon any person to visit any . . . places kept for the purpose of gambling or prostitution, is guilty of a misdemeanor . . ."

In light of the specific language of the information, it can hardly be denied that defendant is charged with having committed a felony, the crime "of violation of section 266(h) of the Penal Code," thus if the pleading is defective it is not so in conferring jurisdiction on the superior court, it is defective only as to form—in the language thereafter used to describe the felony. ■■ The main purpose of an information is to notify the accused of the charge he is to meet at the trial; a defendant is entitled to be apprised with reasonable certainty of the nature of the crime charged that he may prepare his defense and plead his jeopardy against future prosecutions. ■ However, an information is sufficient if it "contains in substance, a statement that the accused has committed some public offense therein specified . . ." and "[s]uch statement may be made . . . in any words sufficient to give the accused notice of the offense of which he is accused." Pen. Code, § 952; *People* v. *Randazzo,* 48 Cal.2d 484 [310 P.2d 413]; *People* v. *Roberts,* 40 Cal.2d 483 [254 P.2d 501].)

■ Appellant argues that inasmuch as "compensation" is an essential element of the offense under section 266h (*People* v. *Smith,* 44 Cal.2d 77 [279 P.2d 33]), that the word

"compensation" must be used and section 952 does not save the pleading from being fatally defective. While the element of compensation must be proved (*People* v. *Smith*, 44 Cal.2d 77 [279 P.2d 33]) failure to allege the same, under the circumstances at bar, does not make the information so defective as to deprive the lower court of jurisdiction to proceed against defendant on the felony charge. Closely resembling the instant case is *People* v. *Vetri*, 178 Cal.App.2d 385 [2 Cal.Rptr. 795], in which the information charging a conspiracy omitted essential elements of the offenses defined in sections 266h and 266i. The court considering the argument here advanced—that the pleading was fatally defective because it failed to allege a necessary element of the offense—rejected the same. It said at page 393: "It is asserted the judgment is a nullity in that the information fails to state a public offense. The argument is that the information charges a violation of Penal Code, sections 266h and 266i, that section 266h which defines pimping requires as a necessary element that the person do the acts 'knowing a female is a prostitute,' that section 266i requires as a necessary element that 'one procure a female for a house of prostitution, or a place where prostitution is practiced or encouraged,' that since the quoted phrases are not in the information any agreement alleged cannot be a violation of either section 266h or 266i because necessary allegations are omitted.

" 'Section 952, which formerly required the pleading to set forth the particular circumstances of the offense charged, as amended, declares that it shall be sufficient if it be "in any words sufficient to give the accused notice of the offense of which he is accused." There, in a nutshell, is stated the principle of our present simplified form of pleading a criminal offense—the accused is entitled to notice of the offense of which he is charged but not to the particular circumstances thereof, such details being furnished him by the transcript of the testimony upon which the indictment or information is founded.' (*People* v. *Beesly*, 119 Cal.App. 82, 85-86 [6 P.2d 114, 970]; *People* v. *Braddock*, 41 Cal.2d 794, 799 [264 P.2d 521].) 'Notice of the particular circumstances of the offense is given not by detailed pleading but by the transcript of the evidence before the committing magistrate (or the grand jury); defendant is entitled to such transcript under section 870 (or § 925) of the Penal Code.' (*People* v. *Roberts*, 40 Cal.2d 483, 486 [254 P.2d 501]; *People* v. *Yant*, 26 Cal.App.2d 725, 730 [80 P.2d 506].)

"The information is so worded as to give defendant notice of the offense with which he was charged. It meets the requirements of Penal Code, sections 951 and 952. At no time during the trial did defendant assert he was unaware of the charge made against him."

Thus, even disregarding the clear evidence in the transcript of the preliminary hearing which supports every element of the felony defined by the latter part of section 266h, and the specific allegation in the information charging him with a felony "violation of section 266(h)," we are at a loss to know how defendant could possibly be unaware of the exact offense with which he is charged. We say this particularly in view of the complete lack of any reference to section 318 or its language in the information, appellant's concession in his brief that he was advised of the exact portion of section 226h involved ("It is manifest by the face of the information that the charge was drawn only against the quoted portion of section 266(h) which specific [*sic*] 'or who solicits or received compensation for soliciting for her . . .' and not any other portion of the statute." A.O.B. p. 8), and his failure to assert here, or at any other time, he did not know the offense was that of pimping. Moreover, the details of the offense were directly brought to defendant's notice by way of the transcript of the preliminary hearing upon which he was willing to and did submit his case to the lower court. We can hardly believe that he, having been present during the preliminary hearing with his counsel and having had in his possession a copy of the transcript thereof prior to the trial, was not aware that the charge was pimping, a felony, involving his solicitation of two Mexican nationals to have sexual intercourse with Mrs. Holmes for $4.00 each, and his actual receipt of the money therefor. And at no time before or during the trial did defendant declare that he did not know or understand the accusation made against him.

Appellant relies heavily on *People* v. *Smith*, 44 Cal.2d 77 [279 P.2d 33], which on this point holds no more than that before there can be a conviction under section 266h there must be evidence that the accused did the acts prohibited thereunder for compensation. It did not hold as urged by appellant that the accusatory pleading must so allege or be so defective as to render it invalid. The case did not involve any matter of sufficiency of the pleading; the appeal was taken from an order setting aside the information under section 995. The Supreme Court held that there was no evidence that

defendant either solicited compensation for soliciting for a prostitute or received the same, which was a necessary element of proof under section 266h. In the case at bar only the sufficiency of the pleading is involved, for the evidence clearly shows not only that defendant solicited customers for Barbara Holmes for compensation but also received the money therefor.

We concede that the information is poorly drawn and somewhat incomplete in its description of the offense, but we are satisfied it is not fatally objectionable, the defendant having been specifically charged, by Penal Code number, with a felony conferring jurisdiction on the superior court, defendant having been advised of the nature of the charge, and no prejudice having resulted to him therefrom. While an allegation to the effect that defendant solicited "for or received compensation," would be desirable it has neither been asserted here, nor at any other time, that defendant did not understand the information in whole or that he was unaware of the exact nature of the crime charged. (*People* v. *Fuski*, 49 Cal.App. 4 [192 P. 552].) Nor does he point up any resulting prejudice or that any of his substantial rights were affected. (*People* v. *Hitchcock*, 104 Cal. 482 [38 P. 198]; *People* v. *Wynn*, 133 Cal. 72 [65 P. 126]; *People* v. *Mead*, 145 Cal. 500 [78 P. 1047].) We see no justification for considering the offense charged in the information as a misdemeanor.

 Appellant contends there is no showing in the evidence that when he solicited the men for Barbara Holmes and received money therefor, that he knew her to be a prostitute, as required under section 266h; and points to her testimony that this is the first time she had ever done "that" and she is no prostitute.

The trial judge was not bound by Mrs. Holmes' denial that she had ever done anything of the kind before and that she is not a prostitute. Her own testimony refutes such a claim and whether she wants to face up to the fact or not, Barbara Holmes is a prostitute, by her own admission that she submitted to sexual intercourse with the two men whom she had never before seen because "we needed the money." "A prostitute is defined variously, as 'A woman given to indiscriminate lewdness; now, specif., a woman who offers herself indiscriminately to sexual intercourse for hire.' (Webster's New International Dictionary (2d ed.). [Citations.]'' (*People* v. *Phillips*, 70 Cal.App.2d 449, 452 [160 P.2d 872].) This

definition was adopted by the court under the then pimping statute of this state.

While Mrs. Holmes further denied she discussed with defendant the subject of "obtaining money by having sexual relations with other men," and made no response to questions whether she ever talked with him about having sexual relations and whether she was to receive any money therefor, it is patent in the evidence that prior to bringing the men to her, defendant and the Holmes woman did discuss her activities as a prostitute and had some kind of an understanding concerning the affairs of that night. That she was a prostitute with defendant soliciting for her is certain from the nature of her conduct reflected in her own testimony. Among other things, she testified that what she did was the idea of both of them; that she and defendant needed the money; that defendant took her to the truck, in the back of which she waited; that defendant brought to her two men whom she had never before seen; that they said nothing to her but she knew why they were there; and that she had intercourse with the two men and was waiting in the truck for the third when she was arrested.

And from his conduct and treatment of her it is just as apparent that at the time defendant solicited the two men for Mrs. Holmes and accepted the money, that he knew her to be a prostitute,—either from his own personal knowledge of her previous activities or from what he had learned of her from living with her in a common-law relationship and from his association with her for three years, and from what she must have indicated to him she was willing to do. The evidence points up an understanding of some kind between them prior to the time defendant brought the men to the truck. The nature of his acts, his complete lack of concern for Mrs. Holmes and her activities in the truck, and the manner of his businesslike conduct are entirely compatible with his knowledge that she had before worked as a prostitute; and her lack of objection to defendant's activities, her willing cooperation therewith and the nature of her conduct with the two men appear to be in line with that of one who had practiced prostitution before. An understanding, tacit or otherwise, between them, even though she denied talking to defendant concerning this, cannot be doubted in light of the fact she did exactly what was expected of her, and her testimony that they were "both to blame for the idea," that she engaged in the activities in question because "we needed the money," he

needed an operation and was unable to work and they were "trying to get some funds to carry" them over. Defendant did not see fit to deny any of this or offer any defense on his behalf. Her denial that she received any money for her services and her testimony that she did not know if any one else did even if entitled to belief, has little probative value in view of the fact that they were all arrested in the midst of their activities before defendant could have given her any money or before she could have known what defendant received, but it is ridiculous to suggest that while she was engaging in the immoral activity with complete strangers she did not believe that defendant was being paid therefor.

However, if it is a technical construction appellant seeks, indulging in a strict interpretation of the evidence and assuming defendant did not know Barbara Holmes was a prostitute when he collected the $4.00 from the first man (Padron) and sent him into the truck, he unquestionably knew, when the first man returned to the car without complaint or asking for the return of his $4.00 and when he took the money from the second man and sent him into the truck, that Barbara was a prostitute; thus he was at least guilty of pimping in connection with the second man.

█ Appellant claims that the court's failure to find on the charge of the prior felony conviction at the time it found him guilty on the main offense constitutes a finding that the prior is not true; and that, in any event, he was prejudiced by the later finding because it cannot be determined if the lower court refused probation because of the prior conviction.

The record discloses the following facts—on February 28, 1961, as part of the trial, the People offered proof that on October 27, 1955, he had been convicted of robbery in the first degree, a felony, in the Los Angeles Superior Court, and the entire cause was submitted for the court's decision; on March 3, defendant was found guilty of the main offense; on March 23, at the outset of any further proceeding, the deputy district attorney called the judge's attention to the fact that evidence had already been received at the trial upon the prior felony charge but that he had neglected to ask the court to make its finding thereon and asked him to do so then; and accordingly the trial judge before proceeding further found the prior felony charge to be true.

While a determination of the issue was forgotten by counsel and the court and no specific order for continuance thereof

was made, the issue was nevertheless still pending, evidence of the prior conviction having been received during the trial. We know of no law in this state requiring the judge, upon a court trial, to make a determination on the issue of the prior at the same time he finds defendant guilty of the main charge; nor do we know of any authority to the effect that a failure to find at that time, evidence having already been received thereon, in effect constitutes a finding that the prior felony conviction charge is not true. Moreover, we fail to see how defendant was in any way prejudiced or his substantial rights affected.

Penal Code, section 1158, provides that ''[w]henever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the offense with which he is charged, . . . the judge . . . must . . . find whether or not he has suffered such previous conviction . . .'' The language of this section, ''whenever . . . defendant is found guilty,'' obviously contemplates a finding on the prior by the judge in a nonjury trial *after* his finding of guilt on the main charge, although it does not specify when thereafter it must be made. Cases cited by appellant involving jury verdicts are not here controlling, for the nature of the jury's function and the fact that the jury is discharged upon rendering a verdict (*People* v. *Ysabel,* 28 Cal.App.2d 259 [82 P.2d 476]), require a determination of the issue of a prior, submitted with the main charge, at the same time. Whereas, in a court trial, in which the judge's jurisdiction over all submitted matters ordinarily continues until disposed of, there is no necessity, practical or otherwise, for making a finding on the prior at the time he finds defendant guilty on the main charge. In fact it is a common practice to continue a finding thereon to a time after the disposition of a motion for new trial on the main charge or until the court has before it a probation or presentence report.

This is not a situation in which the case was reopened for the purpose of proving the prior felony conviction charged, as in *In re Daniels,* 119 Cal.App. 350 [6 P.2d 549], relied upon by appellant herein; but is one in which proof of the charge has already been received at the trial and was before the court at the time it found defendant guilty of violation of section 266h. We do not see how the court's inadvertent failure to act upon the evidence at the time of judgment on the main charge could be considered a finding that defendant

suffered no prior felony conviction, which would be directly contrary to the proven fact and that stated by counsel to the magistrate below, or how it could deprive the court of its right to later make a determination thereon. A situation similar to that at bar, but one in which *after* submission of the case and announcement of the finding of guilt by the trial judge the prosecution offered evidence of the prior conviction, is found in *People* v. *Yancy,* 196 Cal.App.2d 665 [16 Cal. Rptr. 766]. Defendant objected to the evidence as being offered too late. The court rejected his argument and said at page 668 ". . . it is immaterial whether the pronouncement of guilt had been entered in the minutes before proof of the prior was tendered. The trial was incomplete until the court made a finding as to the prior conviction . . . The evidence upon that issue was properly received and considered."

Moreover, we see no prejudice to defendant. At the time the trial court adjudged defendant guilty on the main charge it had before it not only the formal proof of the prior conviction but defense counsel's admission at the preliminary hearing that defendant had been convicted of "armed robbery, which goes back to 1955 for which he is now on parole . . . "; and the issue of the prior was the first determination made, even before hearing was had on the probation officer's report or any action was taken on the matter of sentence. It is further apparent that the court's sentence was not necessarily predicated on the formal finding that defendant had been convicted of a prior felony—robbery in the first degree, but was based among other things—on his criminal record which included not only the armed robbery (the subject of the prior) but a previous conviction on a federal narcotic violation, on the entire probation report, and on the nature of the offense disclosed in the transcript of the preliminary hearing.

As to whether the sentence was excessive, defendant was properly charged with a felony, convicted of a felony and sentenced as a felon. Beyond this the matter of punishment is for the trial court and the time he shall serve is for the Adult Authority.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.