[Crim. No. 6929.   In Bank.   June 28, 1962.]

In re CAROL LANE on Habeas Corpus.

100

Burton Marks for Petitioner.

A. L. Wirin, Fred Okrand, Hillel Chodos and Sheldon G. Bardach as Amici Curiae on behalf of Petitioner.

Roger Arnebergh, City Attorney (Los Angeles), Philip E. Grey, Assistant City Attorney, Wm. E. Doran and George J. Franscell, Deputy City Attorneys, for Respondent.

Stanley Mosk, Attorney General, Arlo E. Smith, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Harold W. Kennedy, County Counsel (Los Angeles), Robert C. Lynch, Deputy County Counsel, Thomas M. Montgomery, County Counsel (Humboldt), Everett L. Coffee, County Counsel (Madera), E. Warren McGuire, County Counsel (Marin), Dean C. Lauritzen, District Attorney (Mariposa), William H. Stoffers, County Counsel (Monterey), George F. Holden, County Counsel (Orange), Ray T. Sullivan, Jr., County Counsel (Riverside), Stanford D. Herlock, County Counsel (San Bernardino), Henry A. Dietz, County Counsel (San Diego), Thomas M. O'Connor, City Attorney (San Francisco), Robert K. Cutler, County Counsel (Santa Barbara), Spencer M. Williams, County Counsel (Santa Clara), Richard M. Ramsey, County Counsel (Sonoma), Calvin E. Baldwin, County Counsel (Tulare), J. F. Coakley, District Attorney (Alameda), John J. Fox, Deputy District Attorney, A. Caminetti, Jr., District Attorney (Amador), C. Keith Lyde, District Attorney (Butte), Harold Wilsey, Jr., District Attorney (Colusa), John A.

Nejedly, District Attorney (Contra Costa), Jack R. Winkler, District Attorney (El Dorado), Clyde H. Larimer, District Attorney (Glenn), Leonard M. Conry, District Attorney (Humboldt), James E. Marable, District Attorney (Imperial), Boyd A. Taylor, District Attorney (Inyo), Kit Nelson, District Attorney (Kern), Charles F. Leach, District Attorney (Kings), Fredric S. Crump, District Attorney (Lake), Paula A. Tennant, District Attorney (Lassen), William B. McKesson, District Attorney (Los Angeles), Frank S. Petersen, District Attorney (Mendocino), Stephen P. Galvin, District Attorney (Merced), Paul B. Baker, District Attorney (Modoc), N. Edward Denton, District Attorney (Mono), David R. York, District Attorney (Napa), Harold A. Berliner, District Attorney (Nevada), Al. B. Broyer, District Attorney (Placer), Chellis Carpenter, District Attorney (Plumas), William O. Mackey, District Attorney (Riverside), John H. O'Brien, District Attorney (San Benito), Lowell E. Lathrop, District Attorney (San Bernardino), James Don Keller, District Attorney (San Diego), Thomas C. Lynch, District Attorney (San Francisco), Laurence Drivon, District Attorney (San Joaquin), Keith C. Sorenson, District Attorney (San Mateo), Vern B. Thomas, District Attorney (Santa Barbara), Richard W. Abbe, District Attorney (Shasta), Gordon I. Smith, District Attorney (Sierra), Albert H. Newton, Jr., District Attorney (Siskiyou), Joseph Maddux, District Attorney (Sonoma), Alexander M. Wolfe, District Attorney (Stanislaus), John G. Hauck, District Attorney (Sutter), Donald R. Kennedy, District Attorney (Trinity), Jay R. Ballantyne, District Attorney (Tulare), Bruce A. Thompson, District Attorney (Ventura), Anthony B. Avilla, District Attorney (Yolo), Joseph L. Heenan, District Attorney (Yuba), Alan M. Firestone, City Attorney (San Diego), Richard J. Curran, Assistant City Attorney, Dale Austin, City Attorney (Oceanside), Barbara Lang Hayes, City Attorney (Carlsbad), Thomas G. Duffy, City Attorney (El Cajon), Gilbert Harelson, City Attorney (La Mesa), James S. Duberg, City Attorney (Chula Vista), Russell G. Taliaferro, City Attorney (Escondido), Robert O. Curran, City Attorney (National City), John F. O'Laughlin, City Attorney (Imperial Beach), and M. Tellefson as Amici Curiae on behalf of Respondent.

McCOMB, J.—Burton Marks petitions for a writ of habeas corpus on behalf of his client, Carol Lane (hereinafter referred to as "defendant"), claiming that she is being illegally

restrained of her liberty by the Chief of Police of the City of Los Angeles.

*Facts*: Defendant was convicted of the crime of "resorting," after a court trial in the Municipal Court for the Los Angeles Judicial District on two charges of violating section 41.07 of the Los Angeles Municipal Code, which provides: "No person shall resort to any office building or to any room used or occupied in connection with, or under the same management as any cafe, restaurant, soft-drink parlor, liquor establishment or similar businesses, or to any public park or to any of the buildings therein or to any vacant lot, room, rooming house, lodging house, residence, apartment house, hotel, housetrailer, street or sidewalk for the purpose of having sexual intercourse with a person to whom he or she is not married, or for the purpose of performing or participating in any lewd act with any such person."

The evidence in support of the convictions was that in each case defendant went from her living room to her bedroom in her own home for the purpose of having sexual intercourse with a male to whom she was not married.

This is the sole question necessary for us to determine: *Has the state adopted a general scheme for the regulation of the criminal aspects of sexual activity and determined, to the exclusion of local regulation, when sexual intercourse between persons not married to each other shall be criminal?*

*Yes.*

*The Law:* A local municipal ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by the general law. (Cal. Const., art. XI, § 11; *Abbott* v. *City of Los Angeles,* 53 Cal.2d 674, 682 [3 Cal.Rptr. 158, 349 P.2d 974] ; *Agnew* v. *City of Los Angeles,* 51 Cal.2d 1, 5 [2] [330 P.2d 385] ; *Tolman* v. *Underhill,* 39 Cal.2d 708, 712 [4] [249 P.2d 280] ; *Pipoly* v. *Benson,* 20 Cal.2d 366, 370 [5] [125 P.2d 482, 147 A.L.R. 515] ; *Natural Milk etc. Assn.* v. *City etc. of San Francisco,* 20 Cal.2d 101, 108 [1] [124 P.2d 25].)

Whenever the Legislature has seen fit to adopt a general scheme for the regulation of a particular subject, the entire control over whatever phases of the subject are covered by state legislation ceases as far as local legislation is concerned. (*Pipoly* v. *Benson, supra,* 20 Cal.2d 366, 371.)

In determining whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, we may look to the "whole purpose and scope of the

legislative scheme'' and are not required to find such an intent solely in the language used in the statute. (*Tolman* v. *Underhill, supra,* at p. 712 [6] ; *Abbott* v. *City of Los Angeles, supra,* at pp. 682 [9], 684.)

The Penal Code sections covering the criminal aspects of sexual activity are so extensive in their scope that they clearly show an intention by the Legislature to adopt a general scheme for the regulation of this subject. Following are the Penal Code sections relating thereto: (1) Sections 261, 262, 263, 264 and 653f (rape) ; (2) sections 265, 266, 266a, 266b, 266c, 266d, 266e, 266f, 266g, 266h, 266i, 267 and 784, subdivision 3 (abduction, procurement, pimping and pandering) ; (3) sections 268 and 269 (seduction under promise of marriage) ; (4) sections 269a and 269b (adultery) ; (5) sections 273e, 273f, 273g, 288, 288.1 and 647a (crimes against children) ; (6) sections 274, 275 and 276 (abortions) ; (7) sections 281, 282, 283 and 284 (bigamy) ; (8) sections 285 and 785 (incest) ; (9) sections 286 and 287 (crime against nature) ; (10) section 288a (sex perversions) ; (11) sections 290 and 291 (registration with sheriff or police chief) ; (12) sections 311, 311.2, 311.3, 311.4, 311.5, 311.6, 311.7, 311.8, 311.9 and and 312 (obscene matter) ; (13) sections 314, 415, 647, subdivisions (a) and (d), and 650½ (acts against public decency) ; (14) sections 315, 316 and 318 (keeping, residing in, or prevailing upon person to visit place kept for prostitution) ; and (15) section 647, subdivision (b), (prostitution).

Sexual intercourse between persons not married to each other is prohibited by some of the above-mentioned Penal Code sections under specified circumstances, including where the female is under the age of 18 (Pen. Code, § 261, subd. 1) ; where she resists and her resistance is overcome by force or violence (Pen. Code, § 261, subd. 3) ; where she is prevented from resisting by threats or by use of a narcotic or anesthetic (Pen. Code, § 261, subd. 4) ; where she is in no position to resist because of insanity, an unconsciousness of the nature of the act, or a fraudulent belief that the perpetrator is her husband (Pen. Code, § 261, subds. 2, 5, 6) ; where there is a monetary consideration (prostitution) (Pen. Code, § 647, subd. (b)) ; where the female is of previous chaste character and is seduced under promise of marriage (Pen. Code, § 268) ; where the parties or either of them, are married to others, and the parties live in a state of cohabitation (Pen. Code, §§ 269a, 269b) ; and where the parties are within the degrees of relationship declared by law to be incestuous (Pen. Code, § 285).

Other Penal Code sections hereinabove cited, although not limited to acts of sexual intercourse, may, depending upon the circumstances, prohibit such acts. (See, e.g., Pen. Code, § 647, subds. (a), (d) [lewd or dissolute conduct in a public place]; § 288 [crimes against children]; § 314 [indecent exposure and obscene exhibitions]; and § 650½ [acts against public decency].)

Although living in a state of cohabitation and adultery is prohibited (Pen. Code, §§ 269a, 269b), neither simple fornication or adultery alone nor living in a state of cohabitation and fornication has been made a crime in this state. (*Rudell* v. *Board of Administration,* 8 Cal.2d 600, 602 [2] [66 P.2d 1263]; *In re Cooper,* 162 Cal. 81, 83 et seq. [121 P. 318]; *Ex parte Thomas,* 103 Cal. 497 [37 P. 514]; *White* v. *White,* 82 Cal. 427, 449 [23 P. 276, 7 L.R.A. 799]; *San Chez* v. *Superior Court,* 153 Cal.App.2d 162, 165 [6] [314 P.2d 135].)

It is therefore clear that the Legislature has determined by implication that such conduct shall not be criminal in this state. (*Cf. Abbott* v. *City of Los Angeles, supra,* 53 Cal.2d 674, 685.)

*Abbott* v. *City of Los Angeles, supra,* involved the constitutionality of a "criminal registration act" enacted by the City of Los Angeles. The only registration of criminals required by the Penal Code was the registration of persons convicted of certain specified sex crimes. (Pen. Code, § 290.) In holding the ordinance unconstitutional as an attempt to legislate in a field already preempted by the state, this court said, at page 685: "In title 2 of part IV, the Legislature has provided a method of controlling crimes involving the use of concealed weapons, machine guns, pistols, tear gas, silencers, and similar items to which a portion of the Los Angeles ordinance is directed. That the state Legislature has not included as many types of crime within this specific portion of the statute as does the ordinance is merely indicative of the fact that the state Legislature did not deem such was necessary in the overall state scheme.

"An examination of the Penal Code also indicates that the state Legislature has preempted the very field of registration as a means of apprehension of criminals. This it has done by expressly requiring registration in some instances and by inferentially rejecting it in others. Thus, in this basic respect the state statutes and the local ordinance are in conflict."

■ Accordingly, a city ordinance attempting to make sexual intercourse between persons not married to each other criminal is in conflict with the state law and is void.

Our attention has been directed to *In re Sic* (1887) 73 Cal. 142 [14 P. 405] ; *Ex parte Johnson* (1887) 73 Cal. 228 [15 P. 43] ; *Ex parte Hong Shen* (1893) 98 Cal. 681 [33 P. 799] ; *In re Murphy* (1900) 128 Cal. 29 [60 P. 465] ; *Odd Fellows' Cemetery Assn.* v. *City & County of San Francisco* (1903) 140 Cal. 226 [73 P. 987] ; *In re Hoffman* (1909) 155 Cal. 114 [99 P. 517, 122 Am.St.Rep. 75] ; *Mann* v. *Scott* (1919) 180 Cal. 550 [182 P. 281] ; *In re Iverson* (1926) 199 Cal. 582 [250 P. 681] ; *In re Simmons* (1926) 199 Cal. 590 [250 P. 684].

The last three of those cases specifically recognize that where the state has fully occupied the field, there is no room for additional requirements by local legislation. Any statements in the remaining cases which would lead to a contrary conclusion have been overruled by later decisions of this court, such as *Pipoly* v. *Benson* (1942), *supra,* 20 Cal.2d 366, 370 [5] ; *Agnew* v. *City of Los Angeles* (1958), *supra,* 51 Cal.2d 1, 5 [2] ; *Abbott* v. *City of Los Angeles* (1960), *supra,* 53 Cal.2d 674, 682.

■ It is an established rule of law that a later decision overrules prior decisions which conflict with it, whether such prior decisions are mentioned and commented upon or not. ■ Mr. Chief Justice Gibson in *Sei Fujii* v. *State of California,* 38 Cal.2d 718, 728 [242 P.2d 617], thus aptly states the correct rule: ". . . it is settled that the authority of an older case may be as effectively dissipated by a later trend of decision as by a statement expressly overruling it."

See also *James* v. *United States,* 366 U.S. 213, 215 [81 S.Ct. 1052, 6 L.Ed.2d 246], in which the United States Supreme Court refused to follow its holding in a prior case involving identical facts, pointing out that the prior decision had been "thoroughly devitalized" by a later holding by the Supreme Court. (*Asher* v. *Texas,* 128 U.S. 129, 131 et seq. [98 S.Ct. 1, 32 L.Ed. 368] ; *Malloy* v. *Fong,* 37 Cal.2d 356, 364 [232 P.2d 241] ; *Lane* y. *Pacific Greyhound Lines,* 26 Cal.2d 575, 583 [5b] [160 P.2d 21] ; *Jones* v. *Jones,* 182 Cal.App.2d 80, 88 [6] [5 Cal.Rptr. 803] ; *Lewis* v. *Security-First Nat. Bank,* 58 Cal. App.2d 827, 828 [137 P.2d 864] ; *Kenney* v. *Antioch L. O. School Dist.,* 18 Cal.App.2d 226, 231 [63 P.2d 1143] ; *Palvutzian* y. *Terkanian,* 47 Cal.App. 47, 52 [190 P. 503] ; 13 Cal. Jur.2d (1954) Courts, § 135, p. 666.)

In view of our conclusions, it is unnecessary to discuss other questions raised by defendant.

Defendant is ordered discharged from custody on the charges involved in this proceeding.

Gibson, C. J., Traynor, J., Schauer, J., and Peters, J., concurred.

GIBSON, C. J.—I have joined in Justice McComb's opinion, but in view of the importance of the subject I think that a more complete discussion of the authorities and the principles relating to occupation of the field is appropriate.

The criminal aspect of sexual intercourse obviously is not a subject within the area of municipal affairs as to which local regulations are superior to state statutes, and local regulations on the matter are invalid if they are in "conflict" with the state legislation as that term is used in section 11 of article XI of the Constitution.[1] (Compare *In re Portnoy*, 21 Cal.2d 237, 239 [131 P.2d 1], with *City of Pasadena* v. *Charleville*, 215 Cal. 384, 388 et seq. [10 P.2d 745].) The word "conflict" is to be given a broad construction; there may be a conflict even though there is no actual grammatical conflict between the statute and the ordinance; and if it is determined, under the general principles developed by the cases, that the state has occupied the field, any local provisions are deemed to be in conflict with the state legislation. (*Pipoly* v. *Benson*, 20 Cal.2d 366, 370-371 [125 P.2d 482, 147 A.L.R. 515].)

It is settled that the enactment by the state of legislation constituting a comprehensive and detailed general plan or scheme with respect to a subject shows, without more, an intent to occupy the field, leaving no room for local regulation, regardless of whether there is an express declaration to that effect by the Legislature. In *Eastlick* v. *City of Los Angeles*, 29 Cal.2d 661, 664-668 [177 P.2d 558, 170 A.L.R. 225], a statute relating to claims against municipalities for injuries resulting from the dangerous condition of their property set forth the time and place for filing the claims and required that certain matters should be included in them. The city charter provided that the claimant must separately specify each item of damage. The court rejected the city's contentions that the charter provision was merely supplementary to the general law

---

[1]Section 11 of article XI of the Constitution provides that a city "may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

and therefore valid, and it held that the Legislature provided "a general scheme" for the presentation of liability claims, that the statute occupied the field and "impliedly" precluded local regulation, and that therefore the city could not impose more onerous conditions as to the contents of the claim.

The *Eastlick* decision was followed in *Wilson* v. *Beville,* 47 Cal.2d 852, 858-861 [306 P.2d 789], where the court held that a city charter provision requiring the filing of claims could not be applied to an inverse condemnation proceeding because the Legislature had fully occupied the field of eminent domain, including the enactment of procedural measures and statutes limiting the time within which actions could be brought. Although there appears to have been no statute applicable to the filing of a claim before commencing an inverse condemnation action, the court concluded that the state legislation as to eminent domain provided "a complete and detailed system," that procedural matters were "fully covered," and that the city could not establish shorter time limits or make recovery more onerous than the Legislature had. (47 Cal.2d at pp. 860-861.)

The doctrine of occupation of the field was applied with respect to another subject in *Tolman* v. *Underhill,* 39 Cal.2d 708, 712-713 [249 P.2d 280], where we held that loyalty oaths prescribed by the regents of the University of California for faculty members were invalid because the state had fully occupied the field by numerous statutes relating to oaths and other tests and qualifications for employment. The court did not indicate that any particular statute prohibited the invalidated oath but rested its decision squarely on the ground that "the Legislature has enacted a *general and detailed scheme* requiring all state employees to execute a prescribed oath . . . , and it could not have intended that they must at the same time remain subject to any such additional loyalty oaths or declarations as the particular agency employing them might see fit to impose." (Italics added.) The principal statutes involved in the *Tolman* case were superseded by the Levering Act (Gov. Code, §§ 3103-3109), and in *Bowen* v. *County of Los Angeles,* 39 Cal.2d 714, 715-716 [249 P.2d 285], we held that this act likewise established "a general and detailed plan with uniform standards for all public employees" and therefore occupied the field.

In accord is *Hall* v. *City of Taft,* 47 Cal.2d 177, 184 et seq. [302 P.2d 574], which affirmed a judgment in favor of a contractor enjoining the city from enforcing its building regula-

tions with respect to the construction of a school building. As an alternative ground for decision the court held that numerous provisions of the Education Code set out a "complete system for the construction of school buildings" and occupied the field. The code provided for the establishment of standards for such buildings by the State Department of Education and for the approval of plans by various agencies and officials, but there appears to have been no specific statutory prohibition against the imposition of stricter standards by a municipality.

State statutes requiring examination, licensing, and regulation of contractors, including "elaborate provision" for investigation of their activities, have been held to occupy the field so that a municipality could not impose supplementary licensing and regulatory requirements even though such supplemental measures were not specifically prohibited by the statutes. (*Agnew* v. *City of Los Angeles,* 51 Cal.2d 1, 5-6 [330 P.2d 385].)

The general principle was expressly recognized in *Chavez* v. *Sargent,* 52 Cal.2d 162, 177 [339 P.2d 801], where the court said: "State regulation of a subject may be so complete and detailed as to indicate an intent to preclude local regulation." Although concluding that the state had not enacted a completely detailed scheme with respect to the question there involved, the court held that legislation regarding activities of organized labor had set forth both a general policy and basic regulations which were fully comprehensive of the field and that a local ordinance in conflict with the policy was invalid. (52 Cal.2d at pp. 177-178.)

*Abbott* v. *City of Los Angeles,* 53 Cal.2d 674, 681, et seq. [3 Cal.Rptr. 158, 349 P.2d 974], again applied the principle discussed above. It was there held that state legislation relating to crime prevention and detection, including a statute requiring that persons convicted of certain specified sex crimes must register in the area where they reside, occupied the field so that a city had no power to enact an ordinance requiring the registration of persons convicted of various enumerated offenses, many of which were not embraced by the state statute. The opinion, pointing to a number of statutes, stated that the Legislature had adopted "a complete legislative scheme intended to occupy the field" and that what was said in *Tolman, supra,* 39 Cal.2d at page 713, regarding the enactment of a detailed scheme by the Legislature was even more applicable to crime prevention and detection than it was to tests for loyalty. (53 Cal.2d at pp. 687-688.) The statement in

*Abbott* that the Legislature has preempted the field "by expressly requiring registration in some instances and by inferentially rejecting it in others" (53 Cal.2d at p. 685) must be read in context, and when this is done it obviously was intended to apply only to a situation like the one there involved where the state statutes were so comprehensive and detailed as to indicate a general plan or scheme to the exclusion of local regulation.

It is thus apparent that the enactment by the state of a comprehensive and detailed general plan or scheme with respect to a subject serves, without more, to occupy the field to the exclusion of local regulation.

Several decisions of this court antedating those discussed above take the position that state legislation renders ordinances invalid only where there is a direct conflict in terms or an exact duplication and that, therefore, a locality may always impose requirements in addition to those set forth by state legislation on a subject. (*Mann* v. *Scott* (1919) 180 Cal. 550, 556 et seq. [182 P. 281]; *In re Hoffman* (1909) 155 Cal. 114, 117-118 [99 P. 517, 122 Am.St.Rep. 75]; *Odd Fellows' Cemetery Assn.* v. *City & County of San Francisco* (1903) 140 Cal. 226, 233 [73 P. 987]; *In re Murphy* (1900) 128 Cal. 29, 30 [60 P. 465]; *Ex Parte Hong Shen* (1893) 98 Cal. 681, 685 [33 P. 799]; *Ex Parte Johnson* (1887) 73 Cal. 228, 229 [15 P. 43]; see *In re Sic* (1887) 73 Cal. 142, 149 [14 P. 405].) These cases did not discuss and apparently did not consider whether the state legislation involved was comprehensive in character. They are, of course, correct insofar as they hold that some or considerable state legislation falling short of a comprehensive general scheme does not occupy the field, but they have been impliedly overruled by the later decisions to the extent that they rest on the theory that requirements in addition to those set forth in state legislation may always be imposed by a locality. There is also language in accord with this erroneous theory in *Natural Milk etc. Assn.* v. *City etc. of San Francisco* (1942) 20 Cal.2d 101, 109-110 [124 P.2d 25]; *In re Simmons* (1926) 199 Cal. 590, 593 [250 P. 684]; and *In re Iverson* (1926) 199 Cal. 582, 585-587 [250 P. 681]. However, in these three cases the statutes expressly authorized supplementary local regulation, and ordinances imposing additional requirements were properly upheld even though, as indicated by the court, the state legislation was comprehensive. The language in the cases cited in this paragraph must, as pointed out by Justice McComb with respect to most of

them, be expressly disapproved insofar as it is inconsistent with the rule that the enactment by the state of a comprehensive and detailed general plan or scheme with respect to a subject serves, without more, to occupy the field to the exclusion of local regulation.

Whether a particular statute or group of statutes is sufficiently comprehensive to show an intent to occupy the entire field is a matter which cannot properly be decided upon the basis of any single, precise test. Rather, the courts must rely upon broad general principles which are flexible enough to embrace our varied and rapidly expanding body of legislation. Determination of the question depends primarily upon an analysis of the statute and a consideration of the facts and circumstances upon which it was intended to operate, and the intent of the Legislature is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme. (*Tolman* v. *Underhill, supra,* 39 Cal.2d 708, 712.) In order to hold that the field has been occupied, it is not necessary that the Legislature has specifically declared the scheme or policy in so many words, and the general intent may be found in a multiplicity of statutes taken together. (*Abbott* v. *City of Los Angeles, supra,* 53 Cal.2d 674, 687.) One of the factors stressed in the decisions is whether or not the subject calls for uniform treatment throughout the state. (*Abbott* v. *City of Los Angeles, supra,* 53 Cal. 2d at pp. 687-688; *Tolman* v. *Underhill, supra,* 39 Cal.2d at p. 713.)

What has been said above makes it clear that whether the state has fully occupied the field with respect to any given subject depends upon considerations which will necessarily vary and must therefore be determined in every case without prejudging the result as to subjects not before the court.[2] The analysis made in Justice McComb's opinion of the Penal Code provisions relating to the criminal aspect of sexual intercourse demonstrates that the Legislature has established a comprehensive general scheme with respect to this subject and has occupied the entire field. No useful purpose would be served by repeating the discussion here.

---

[2]For example, we should not attempt to determine here whether gambling is a proper subject for local regulation, as has been held in some older decisions of this court and several of the District Courts of Appeal. (E.g., *Ex parte McClain,* 134 Cal. 110, 111 [66 P. 69, 86 Am.St.Rep. 243, 54 L.R.A. 779]; *In re Murphy,* 128 Cal. 29, 36 [60 P. 465]; *In re Farrant,* 181 Cal.App.2d 231, 232 et seq. [5 Cal.Rptr. 171]; *Remmer* v. *Municipal Court,* 90 Cal.App.2d 854, 856-859 [204 P.2d 92].)

The subject under consideration here requires uniform treatment throughout the state. Modern methods of transportation have led people to travel from one location to another more frequently than in the past. Over 86 per cent of California's population resides in urban communities. (California's Population in 1961, p. 27, published by the Department of Finance.) The growth of the population in California has been very large in the last few years, and in many areas the outlying portions of neighboring cities have developed to such an extent that there is one continuous urban community, with boundary lines serving only to demark different political entities. For example, between 1940 and 1960 the population of Los Angeles County increased from 2,785,643 to 6,038,771, and the population of adjacent Orange County increased from 130,760 to 703,925. In 1961 there were 71 incorporated municipalities in Los Angeles County alone. (California's Population in 1961, *supra*, Table 13, p. 20; Table 18, pp. 30-31.)[3]

Under these circumstances much unnecessary confusion and uncertainty would result if each locality were to enforce different rules with respect to the subject involved here. Even if it be assumed that the considerations having a substantial bearing on the matter are not identical in all localities, I am satisfied that there are not sufficient differences to justify the harmful consequences of a multiplicity of divergent regulations by municipalities. The subject is not one affecting only an isolated group of citizens but is one involving the concerns of people generally, and it should be legislated upon accordingly.

It has been suggested that the ordinance was not intended to create a crime in addition to that punishable by state law but was designed and is enforced as a law against prostitution where prostitution is difficult to prove.[4] This view of the ordinance, however, makes it even clearer that the local regulation

---

[3]With respect to other major urban areas in the state, between 1950 and 1960 the population of Santa Clara County increased by 121 per cent, and the population of San Diego, San Mateo, Sacramento, and San Bernardino Counties increased by approximately 80 per cent.

[4]Amici curiae state that the ordinance before us is used to obtain convictions of prostitutes. They quote a resolution of the Los Angeles City Council and various public statements made by city officials suggesting that the ordinance is a law against prostitution and does not create an additional crime. It should also be pointed out that in the Municipal Code the ordinance is immediately preceded by two ordinances entitled "Prostitution—Offering" and "Prostitution—Soliciting" and followed by one entitled "Prostitution—Procuring."

is invalid. There can be no question that the Legislature has occupied the field with respect to the crime of prostitution. (Pen. Code, § 647, subd. (b).) Moreover, in California one of the essential elements of the crime of prostitution is the existence of a consideration (*People* v. *Romo*, 200 Cal.App.2d 83, 90 [19 Cal.Rptr. 179]; *People* v. *Courtney*, 176 Cal. App.2d 731, 739 [1 Cal.Rptr. 789]; *People* v. *Head*, 146 Cal. App.2d 744, 748 [304 P.2d 761]; *People* v. *Mitchell*, 91 Cal. App.2d 214, 217 [205 P.2d 101]; *People* v. *Phillips*, 70 Cal. App.2d 449, 452 [160 P.2d 872]; *People* v. *Marron*, 140 Cal. App. 432, 434 [35 P.2d 610]; *Ferguson* v. *Superior Court*, 26 Cal.App. 554, 558 [147 P. 603]), and the ordinance does not by its terms require consideration as an element. Even if the ordinance be viewed as a measure against prostitution which is enforced only where consideration is suspected to exist, this use of the ordinance makes the police and prosecuting officials the sole judges of whether consideration is involved. The fact that the existence of consideration may not always be easily shown cannot, of course, justify departing from the fundamental principle that every element of a crime must be proved by sufficient evidence.

I agree that petitioner should be discharged from custody with respect to the charges involved here.

Traynor, J., and Peters, J., concurred.

DOOLING, J.—I dissent. It has always been the law in this state, until this decision, that where the Legislature has prohibited certain conduct the cities and counties under the express grant of power contained in the California Constitution, section 11, article XI, could prohibit other and different conduct in the same field by local ordinance. The cases in support of this rule are collected in the dissenting opinion heretofore filed in this case (Cal.) 18 Cal.Rptr. 33, 35, 367 P.2d 673, 675, and need not be repeated here.

I concede that as to statutes requiring affirmative action, i.e., registration, the filing of claims, the obtaining of licenses, etc., the requirements for such affirmative action provided by state statute may be well intended to be exclusive of additional requirements and in effect may amount to an implied legislative determination that if such affirmative requirements are met, nothing more of affirmative action can be required. The hiatus in the reasoning of the majority in this case is found in the attempt to transfer this concept to purely pro-

hibitory legislation. It is one thing to say that where the Legislature imposes the requirement of doing something affirmative upon a citizen, it may be implied that the Legislature intended that the cities and counties shall not require him to do more. It is quite another thing to say that where the Legislature prohibits his doing something it shall be implied that the Legislature intended that the cities and counties should not add additional prohibitions.

The distinction may well be illustrated by a licensing statute such as that involved in *Agnew* v. *City of Los Angeles,* 51 Cal.2d 1 [330 P.2d 385]. Where the state requires certain steps to be taken to procure a license to engage in a particular business, those steps are taken and the license issued, the right of the licensee to engage in the licensed business is affirmatively granted to him by the state and the implication that no further requirements should be imposed upon him may be naturally drawn. But where the Legislature prohibits certain sexual relations between unmarried persons, are we equally to infer an intention of the Legislature that the right of unmarried persons to engage in any other sort of sexual relations not expressly forbidden by the Legislature has been impliedly granted to them? To so hold is in effect to say that because the Legislature has not forbidden fornication, it has licensed it. I cannot bring myself to the point of agreeing that we may imply from the Legislature's failure to prohibit fornication an intention to make it legal.

Section 11, article XI was placed in the Constitution by the people of the state. If the changes which the state has undergone make it unwise to continue in force the power granted by that section to the cities and counties to enact legislation not in conflict with general laws, the people can repeal it. Until they do so its grant of power remains, what it has always been, "just as broad, sweeping and inclusive as the powers with relation thereto which are vested in the legislature itself, except that they must not conflict with the Constitution or with general laws, and must be confined in their application only to the city or county adopting them." (*Stanislaus County etc. Assn.* v. *County of Stanislaus,* 8 Cal.2d 378, 384 [65 P.2d 1305].)

White, J., concurred.