

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711
December 7, 1970

Dr. J. W. Edgar
Commissioner of Education
201 East 11th Street
Austin, Texas' 78711

Opinion No. M-733

Re: Whether the Commissioners
Court of Johnson County may
by its order abolish the
office of County School
Superintendent which is
otherwise to be filled at
the General Election in
November, 1970.

Dear Dr. Edgar:

In connection with your recent request for an opinion of this office, we have been supplied with the following facts:

On November 13, 1897, the Commissioners Court of Johnson County passed an order which reads, in its relevent portion, as follows:

"It is ordered by the Court that the Office of County School Superintendent of Public Instruction be and the same is hereby created, and it is ordered that a county school superintendent be elected at each general election hereafter the making of this order . . ."

This order is recorded in Book 5, page 133, of the Minutes of the Court.

You have further advised us that on July 13, 1970, the Commissioners Court adopted the following resolution:

"BE IT RESOLVED that the office of County School Superintendent of Johnson County, Texas, be and the same is hereby abolished as recommended by the Court on February 2, 1970, effective December 31, 1970."

This resolution is recorded in volume 15, page 514, of the Minutes of the Court.

We have also been furnished a copy of a resolution of the Johnson County School Board adopted on September 25, 1970, in favor

of abolishing the office of County Superintendent as of December 31, 1970. In this connection, you have advised us that under normal procedures the office of County Superintendent of Johnson County would be filled at the general election in November, 1970.

Records at hand furnished by the Texas Education Agency indicate that the scholastic population of Johnson County for the year 1970-71 is in excess of 10,000, and that the scholastic population of that county has been in excess of 3,000 at all times since 1923-24. We do not have at hand records going back far enough to show at what time the scholastic population first exceeded 3,000.

You have requested our opinion on the following questions:

"The authority of the Commissioners Court of Johnson County, if any, to abolish the office of elective County Superintendent in Johnson County."

By supplementary letter you have requested our opinion upon the following additional question:

"Where the county school board also goes on record as favoring the abolishment of office of elective county school superintendent, effective at the end of its present term (December 31, 1970), and the county judge agrees to serve thereafter as an ex officio county superintendent without pay, may the county judge legally hold the position and/or serve in the capacity of county superintendent, ex officio or otherwise, under the circumstances and laws involved herein."

We are of the opinion that the Commissioners Court of Johnson County is without authority to abolish the elective office of County Superintendent of Johnson County. Statutes enacted in 1887 and 1889 granting to the commissioners court in each county the power to create and the power to abolish the office were not included in the 1925 revision.

The creation and abolishment of the office is presently governed by a line of statutes beginning with Section 36, Chapter 124, page 263, Acts of the 29th Legislature, Regular Session, 1905. Under that statute the voters of each county, at an election called pursuant to a petition to determine the matters, elected whether the office would be created in that county. The statute also made provision for abolishing the office.

Section 1, Chapter 111, page 210, Acts of the 30th Legislature, 1907, amended the 1905 statute and made it mandatory that the commissioners court of every county in the state having three

thousand scholastic population should provide for the election of a County Superintendent of Public Instruction at each general election, and provided that immediately after passage of the Act the court should appoint a person to serve in such office until a superintendent was elected and qualified. This statute provided for a two year term of office. No provision for abolishing the office remained in the statute under this amendment.

The substance of the above statutes was codified as Article 2688, Revised Civil Statutes of Texas, 1925, with the added provision that:

"In every county that shall attain three thousand scholastic population or more, the commissioners court shall appoint such superintendent who shall perform the duties of such office until the election and qualification of his successor."

Under Section 1, Chapter 357, page 849, Acts of the 42nd Legislature, Regular Session, 1931, Article 2688 was amended by the addition of a proviso relating to the appointment of a County Superintendent in counties having a population in excess of 350,000.

Under Section 1, Chapter 21, page 47, Acts of the 42nd Legislature, 3rd Called Session, 1932, Article 2688 was again amended to change the term of office to four years, and to add a proviso reading as follows:

"provided further that in counties having a scholastic population of between three thousand (3,000) and five thousand (5,000) scholastics, wherein the office of County Superintendent has not been created and a Superintendent elected, then in such counties the question of whether or not such office is established shall be determined by the qualified voters of said county in a special election called therefor by the Commissioners Court of said county, upon petition therefor as hereinabove specified."

Under Section 1, Chapter 208, page 287, Acts of the 49th Legislature, Regular Session, 1945, Article 2688 was further amended by providing that once a county established the office of county superintendent and subsequently the scholastic population was determined to be less than three thousand but more than two thousand, the office would continue to exist unless abolished by a majority vote of qualified taxpaying voters. Even if the vote were in favor

of abolishing the office, it could not be abolished until the expiration of the term of office for which the County Superintendent was elected or appointed. This amendment also increased to four years the term of superintendents in counties having a population in excess of 350,000.

Effective September 1, 1969, Article 2688 was repealed and the substance of the article was incorporated in Articles 17.41 through 17.45 of the Texas Education Code. The provisions which make mandatory the appointment or election of a county superintendent are codified in Article 17.41.

In our opinion, although the office of County Superintendent of Public Instruction was provided for by order of the Commissioners Court in 1897, before passage of the legislation which is now codified as Article 17.41 of the Texas Education Code, at such time as the scholastic population of Johnson County attained 3,000 in number, the office thereupon existed by virtue of and under the authority of the state statute then in effect governing the creation of such office. After the Act of 1907, state law made mandatory the creation of the office and the appointment and election of a superintendent. It was not necessary to call an election on the question of whether the office should be created. Marfa Independent School District v. Davis, 102 S.W.2d 283 (Tex.Civ.App. 1937, error ref.) The legal result of the enactment of the Act of 1907 was to supersede the county order, in effect to pre-empt the field for state regulation.

In this connection note the following language from In re Lane, 58 Cal.2d 99, 102, 22 Cal. Reptr., 857, 372 P.2d 897 (Cal.Sup. 1962):

"Whenever the Legislature has seen fit to adopt a general scheme for the regulation of a particular subject, the entire control over whatever phases of the subject are covered by state legislation ceases so far as local legislation is concerned." citing Pipoloy v. Benson, 20 Cal. 2d 366, 371, 125 P.2d 482, 147 A.L.R. 515.

From In Re Lane, supra, note also the following:

"In determining whether the Legislature intended to occupy a particular field to the exclusion of all local regulation we may look to the 'whole purpose and scope of the legislative scheme' and are not required to find such an intent solely in the language used in the statute." citing Tolman v. Underhill, 39 Cal. 2d at p. 712(6), 249 P.2d at

p. 283; Abbott v. City of Los Angeles, 53 Cal.
2d 674, 682, 3 Cal.Reptr. 158, 349 P.2d 974.

In City of Baltimore v. Sitnik, 255 A.2d 376, a case
dealing with a city ordinance, the court did not apply the principle
of pre-emption under the facts of the case, but did make this state-
ment:

> "Labels are ofttimes misleading and one may
> easily fall into error by superimposing a class-
> ification upon decisions of a foreign jurisdiction,
> however, it would appear that in addition to New
> York, that California, Massachusetts, Ohio, Oklahoma,
> North Carolina and Illinois have followed the pre-
> emption concept." citing In re Lane, 58 Cal.2d
> 99, 22 Cal.Rptr. 857, 372 P.2d 897 (1962); Tolman v.
> Underhill, 39 Ca.2d 708, 249 P.2d 280 (1952); Pipoly
> v. Benson, 20 Cal.2d 366, 125 P.2d 482, 147 A.L.R.
> 515 (1942); Dudley v. City of Cambridge, 347 Mass.
> 543, 199 N.E.2d 208 (1964); Markowski v. Backstrom,
> 10 Ohio Misc. 139, 226 N.E.2d 825 (1967); 7-Eleven
> Inc. v. McClain, 422 P.2d 455 (Okl. 1967); Staley
> v. City of Winston-Salem, 258 N.C. 244, 128 S.E.2d
> 604 (1962); West Chicago Street R.R. Co. v. Ill.,
> 201 U.S. 506, 521, 26 S.Ct. 518, 50 L.Ed. 845 (1906).

Since the office of county superintendent exists solely
under the authority of state law, that office may be abolished only
pursuant to state law.

As pointed out in our historical summary of Article 17.41
and antecedent statutes, there was a provision in the Act of 1905
for abolishing the office, but no such provision appears in any of
the statutes that amended or superseded that Act.

Article 2688e, Vernon's Civil Statutes, enacted as Chapter
292 Acts of the 57th Legislature, Regular Session, 1961, did provide
for abolishing the office of county superintendent. This article was
repealed effective September 1, 1969, and its substance codified in
Article 17.64 of the Texas Education Code. Under this latter article
the office may be abolished only upon petition of the voters and ap-
proval by a majority of the qualified electors of the proposition that
the office be abolished.

Furthermore, Section (d) of Article 17.64 expressly pro-
vides that an election on the propositions of abolishing the office
may not be held during the year that a regular election for the

office is being held. We understand that an election for the office would normally be held in 1970.

In view of the provisions of Article 17.64, we are of the opinion that the Commissioners Court of Johnson County is without authority to abolish the office of county superintendent solely on its own order. We are also of the opinion that the procedure provided in Article 17.64 of the Education Code for abolishing the office is the exclusive procedure and that it is not available during the year 1970.

Your second question would appear to be based on the premise that with the approval of the school board the commissioners court may abolish the office of county superintendent. In the light of controlling statutes discussed herein our opinion is to the contrary, as the resolution adopted by the school board can have no legal effect.

Article 17.47 of the Education Code is derived from Article 2701, Vernon's Civil Statutes, and reads as follows:

"In any county in which no county superintendent has been elected or appointed, the county judge shall be ex officio county superintendent and shall perform all the duties required of that office."

Our attention has been directed to Article 17.47 of the Education Code and the proposition urged that if no person has been elected to the office of county superintendent for the term beginning January 1, 1971, the county judge shall be ex-officio county superintendent.

We do not agree with that construction of Article 17.47. To so construe the article would in effect permit it to provide an alternative means of abolishing the office, a procedure explicitly provided for in Article 17.64 of the Code.

In our view Article 17.47 must be read and construed in the context of the subchapter of which it is a part. That subchapter provides for creating or continuing the office of county superintendent under various situations. Article 17.47 is then included simply to provide that if the office has never been created either under mandatory provisions of the chapter or by decision of the voters after a petition, then, and only then, will the county judge serve as ex-officio superintendent. Stated in another way, Article 17.47 is primarily intended to operate in a county where the office of county superintendent has not been created and does not exist.

Article 17.47 is clearly not intended to facilitate abolishment of the office of county superintendent. The legislature has clearly and explicitly provided for abolishing the office, and for the county judge assuming the duties, in Article 17.64(a) and (b), part of the same subchapter. The Legislature would not include Article 17.47 for the same purpose.

Even if the proposition were urged that Article 17.47 was enacted to provide for assumption of the duties of county superintendent by the county judge at any time there is no incumbent, nevertheless it could not take effect until the abolishment of the office of county superintendent becomes effective. Attorney General's Opinion C-708 (1966). That office has not been abolished in Johnson County under the governing statutes.

An examination of the legislative history of Article 2701, from which Article 17.47 of the Code was derived, supports our view of its function. The forerunner of this statute was first enacted as Section 42, Chapter 124, page 263, Acts of the 29th Legislature, Regular Session, 1905.

Section 42 of that statute reads as follows:

"In each county in this State having no school superintendent the county judge shall be an ex-officio county superintendent of public instruction, and shall perform all the duties required of the county superintendent in this chapter."

In our view the language of this statute indicates that it is clearly directed to the situation where a county has never had a county superintendent, and is not a vehicle to abolish that office.

This view is reinforced by the fact that in Section 36 of the same Act provision is made for abolishing the office by petition and election of the voters. It may be that if that statutory provision for abolishing the office had been followed the duties of county superintendent would have devolved upon the county judge by virtue of Section 42, but again we point out that in Johnson County the presently authorized statutory procedure for abolishing the office has not been followed.

The 1907 amendment to the statute of 1905 that provided for the office of county superintendent omitted the provision for abolishing the office that was included in the 1905 statute. The Legislature in 1961 apparently felt the need of a statutory procedure

for abolishing the office and provided such a procedure under Chapter 292, Acts of the 57th Legislature, Regular Session, 1961. This Act was published as Article 2688e in Vernon's Civil Statutes, and later codified as Article 17.64 of the Texas Education Code. This is presently the only means authorized by statute for abolishing the office, and it was not available in Johnson County in 1970, the regularly scheduled year for an election to fill the office. Art. 17.64(d), Tex. Educ. Code.

There are two constitutional provisions which preclude the County Judge from assuming the duties of county superintendent as conditions now exist in Johnson County.

The first is Article XVI, Section 40, which prohibits one person holding or exercising at the same time more than one civil office of emolument except under certain conditions not applicable here. The office of County Superintendent continues to exist in Johnson County, hence the same person may not exercise the powers of that office while holding the office of County Judge. Each office is a Civil Office of emolument and the prohibition applies even though the person seeking to perform the duties of both offices rejects compensation for one office. Attorney General's Opinion No. WW-109 (1957).

The other constitutional provision is Article XVI, Section 17. Under that provision all officers within this State shall continue to perform the duties of their offices until their successors have been duly qualified. Therefore the incumbent in the office of county superintendent is charged with performing the duties of that office until a successor has been lawfully selected and has qualified, thus precluding the County Judge from assuming those duties.

## S U M M A R Y

The Commissioners Court of Johnson County is without authority to abolish by its order the office of County Superintendent of Johnson County.

The office, even though initially created by an order of the commissioners court in 1897, now exists by virtue of and subject to the provisions of Article 17.41 of the Texas Education Code.

The office therefore may be abolished only pursuant to Article 17.64 of the Education Code. Section (d) of that article prohibits an election to abolish the office in the same year that the office

is due to be filled at a regular election; hence the office could not be abolished during the calendar year 1970, even under the provisions of Article 17.64.

The resolution of the county school board favoring abolishing the office has no legal effect in view of the provisions of the cited statutes.

As long as the office of County Superintendent of Johnson County continues to exist, as we have held that it does at this time, the county judge may not serve also as county superintendent, ex officio or otherwise, with or without pay, as this is precluded by the provisions of Article XVI, Section 40 of the Constitution of the State of Texas. The provisions of Article XVI, Section 17, also preclude the county judge from assuming the duties of the county superintendent.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James S. Swearingen
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
James McCoy
S. J. Aronson
Max Hamilton
Houghton Brownlee

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant