[No. B029120. Second Dist., Div. Three. June 8, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
TERON JASON BROWN, Defendant and Appellant.

[No. B029419. Second Dist., Div. Three. June 8, 1988.]

In re TERON JASON BROWN on Habeas Corpus.

**COUNSEL**

Julie Schumer, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Susanne C. Wylie and Cindy M. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

Wilbur F. Littlefield, Public Defender (Los Angeles), Laurence M. Sarnoff, Jane Marpet and Albert J. Menaster, Deputy Public Defenders, as Amici Curiae.

**OPINION**

**ARABIAN, J.—**

### INTRODUCTION

Appellant Teron Jason Brown suffered a conviction for involuntary manslaughter (Pen. Code, § 192, subd. (b)) following a court trial. The court

sentenced him to the midterm of three years in state prison and enhanced the punishment five years pursuant to Penal Code section 667, finding that both his current offense and a prior conviction of robbery were serious felonies within the meaning of Penal Code section 1192.7, subdivision (c).

We determine as a matter of first impression that involuntary manslaughter may constitute a serious felony within the meaning of section 667 if the record establishes that the defendant "personally inflict[ed] great bodily injury" in the commission of the crime. (Pen. Code, § 1192.7, subd. (c)(8).) Accordingly, we affirm the judgment.[1]

## FACTUAL BACKGROUND

The information originally charged appellant with the murder of 14-month-old Chela Brown. Chela died of sepsis resulting from second and third degree burns over 75 percent of her body. On March 26, 1985, as on several prior occasions, she had been left in appellant's care while her mother, Cheree Taylor, went to work. When appellant picked up Taylor that afternoon, Chela was with him wrapped in a blanket, and he indicated she had had an accident. Taylor noticed the child's skin "was a little red," and they took her to three hospitals where she was treated for severe burns.

Chela died one month later after "heroic measures" failed to control the resulting infection. During that period she was constantly in pain. Dr. William Davies, a burn specialist at Torrance Memorial Hospital, testified that Chela's burns were consistent with "the typical distribution of an immersion burn similar to sometimes seen in bathtubs." The severity of her injuries could have been caused by placing her in a tub of 122-degree water three to five minutes, which would have caused the child "mortal pain." Dr. Davies further opined that "[i]t is not possible to produce this type of a burn with spilling water."

Los Angeles Police Detective Connie Castruita investigated the incident. At the victim's residence, she examined the bathtub and filled it with hot water. With a thermometer she determined the temperature to be 122 degrees; she also placed her hand in the water for "just a few seconds," which caused her skin to turn red. The victim's grandmother, Emma Stokes, also reported to the police that she found "some burned skin in the tub" two days after her granddaughter's injuries.

---

[1] This appeal incorporates the same claim of error raised in appellant's petition for writ of habeas corpus filed prior to the perfection of the appeal. On September 10, 1987, we ordered the writ petition considered concurrently with the appeal. In light of our determination herein, we also deny the petition.

Based upon her investigation, Detective Castruita and her partner arrested appellant for child abuse and transported him to jail. En route he related to the officers that he had been cooking potatoes and had accidently spilled some water on the victim, who was on the floor. When the officers indicated this was inconsistent with the physical evidence, he gave them a second explanation: He was holding the victim in his arms while cooking at the stove. She kicked a pot of boiling water, which flew back and burned her; he then accidently dropped her onto more hot water on the floor. Upon arrival at the police station for booking, appellant told yet a third version of the events, which also was inconsistent with the physical evidence.

## ISSUE PRESENTED

The sole issue presented is whether involuntary manslaughter constitutes a serious felony within the meaning of Penal Code section 667. We hold that it may if the prosecution pleads and proves the defendant "inflict[ed] great bodily injury" in committing the offense. (Pen. Code, § 1192.7, subd. (c)(8).)

## DISCUSSION

Penal Code[2] section 667 provides for a five-year enhancement upon conviction of a serious felony when the defendant also has suffered a prior conviction for a serious felony.[3] "Serious felony" is defined by reference to section 1192.7, subdivision (c), which lists specific crimes as well as certain circumstances for which the enhancement shall be imposed.[4]

---

[2] Unless otherwise indicated, all further statutory references are to the Penal Code.

[3] Section 667 provides as follows: "(a) In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively.

"(b) This section shall not be applied when the punishment imposed under other provisions of law would result in a longer term of imprisonment. There is no requirement of prior incarceration or commitment for this section to apply.

"(c) The Legislature may increase the length of the enhancement of sentence provided in this section by a statute passed by majority vote of each house thereof.

"(d) As used in this section 'serious felony' means a serious felony listed in subdivision (c) of Section 1192.7.

"(e) The provisions of this section shall not be amended by the Legislature except by statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring, or by a statute that becomes effective only when approved by the electors."

[4] Section 1192.7, subdivision (c) provides as follows: "(c) As used in this section 'serious felony' means any of the following: [¶] (1) Murder or voluntary manslaughter; (2) mayhem; (3) rape; (4) sodomy by force, violence, duress, menace, threat of great bodily injury, or fear

No reviewing court has yet ruled on the precise question of whether a current conviction for involuntary manslaughter can constitute a serious felony despite its nonenumeration as such in section 1192.7, subdivision (c). (But see *People* v. *Cook* (1984) 158 Cal.App.3d 948 [205 Cal.Rptr. 105].) However, in *People* v. *Equarte* (1986) 42 Cal.3d 456 [229 Cal.Rptr. 116, 722 P.2d 890], the California Supreme Court examined an analogous question of whether assault with a deadly weapon (§ 245, subd. (a)(1)) may invoke the five-year enhancement notwithstanding its omission from section 1192.7, subdivision (c). The Supreme Court answered that question in the affirmative. It held that the provisions of section 667 obtain if the prosecution establishes the defendant "personally used a dangerous or deadly weapon," thus making the crime a "serious felony" under one of the more general classifications of section 1192.7, subdivision (c), relating to the manner of committing the offense rather than the specific offense itself. (§ 1192.7, subd. (c)(23).) We are persuaded the analysis in *Equarte* applies with equal logic to the legal and factual issues before us; and we reach a similar conclusion: While not specified as a serious felony, involuntary manslaughter may come within the purview of section 667 if the defendant "personally inflict[ed] great bodily injury" in the commission of the crime. (§ 1192.7, subd. (c)(8).)

Since *Equarte* is dispositive, we review the opinion in some detail: The defendant was charged with two counts of assault with a deadly weapon. (§ 245, subd. (a)(1).) In a separate paragraph, he was further charged with having been previously convicted of a "serious felony" within the meaning of sections 667 and 1192.7, subdivision (c)(25), attempted robbery. However, "[t]he complaint did not explicitly allege either generally or by reference to any specific provision of section 1192.7, subdivision (c), that [his]

---

of immediate and unlawful bodily injury on the victim or another person; (5) oral copulation by force, violence, duress, menace, threat of great bodily injury, or fear of immediate and unlawful bodily injury on the victim or another person; (6) lewd or lascivious acts on a child under the age of 14 years; (7) any felony punishable by death or imprisonment in the state prison for life; (8) any other felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm; (9) attempted murder; (10) assault with intent to commit rape or robbery; (11) assault with a deadly weapon or instrument on a peace officer; (12) assault by a life prisoner on a noninmate; (13) assault with a deadly weapon by an inmate; (14) arson; (15) exploding a destructive device or any explosive with intent to injure; (16) exploding a destructive device or any explosive causing great bodily injury or mayhem; (17) exploding a destructive device or any explosive with intent to murder; (18) burglary of an inhabited dwelling house, or trailer coach as defined by the Vehicle Code, or inhabited portion of any other building; (19) robbery; (20) kidnapping; (21) holding of a hostage by a person confined in a state prison; (22) attempt to commit a felony punishable by death or imprisonment in the state prison for life; (23) any felony in which the defendant personally used a dangerous or deadly weapon; (24) selling, furnishing, administering, giving, or offering to sell, furnish, administer, or give heroin, cocaine, or phencyclidine (PCP) to a minor; (25) any attempt to commit a crime listed in this subdivision other than an assault."

*current* offenses were 'serious felonies' . . . , and it contained no allegation that [he] had 'personally used a dangerous or deadly weapon' in the current offenses." (*People* v. *Equarte, supra,* 42 Cal.3d at p. 459.)

The jury found the defendant guilty of one count of assault with a deadly weapon; and the facts established that he acted alone in perpetrating the crime. (*Id.,* at p. 467.) At sentencing, the trial court imposed a five-year enhancement pursuant to sections 667 and 1192.7, subdivision (c)(23), apparently finding that the defendant's "personal use" of a weapon had been adequately established by the trial testimony and that a more explicit pleading of the basis for the enhancement was unnecessary. (*Id.,* at p. 460.)

In reviewing the propriety of the sentence, the Supreme Court first reaffirmed its conclusion in *People* v. *Jackson* (1985) 37 Cal.3d 826, 831-832 [210 Cal.Rptr. 623, 694 P.2d 736], that section 1192.7, subdivision (c), does not confine its enumeration of serious felonies to "specific, discrete offenses." (*People* v. *Equarte, supra,* 42 Cal.3d at pp. 463-464.) Rather, the statute "is an amalgam of different elements." (*People* v. *Jackson, supra,* 37 Cal.3d at p. 832.) Accordingly, " 'the enhancement provisions . . . refer to the criminal *conduct* described therein, *not* to specific criminal *offenses* and thus these provisions apply whenever the prosecution pleads and proves the specified conduct. . . .' [Citation.]" (*People* v. *Equarte, supra,* 42 Cal.3d at pp. 463-464, quoting *People* v. *Arwood* (1985) 165 Cal.App.3d 167, 174-175 [211 Cal.Rptr. 307].)

From the foregoing analysis, the court determined that "[b]y incorporating section 1192.7, subdivision (c)(23) into section 667, the drafters evidenced their conclusion that a defendant who 'personally uses a dangerous or deadly weapon' in the commission of a felony should be classified as a 'serious' felon and should be subject to an additional five-year enhancement if he has previously been convicted of a serious felony." (*People* v. *Equarte, supra,* 42 Cal.3d at p. 464.) Consequently, "under subdivision (c)(23), 'any felony'—including assault with a deadly weapon—may be found to constitute a serious felony if the prosecution properly pleads and proves that defendant personally used a deadly or dangerous weapon in the commission of the offense." (*Id.,* at p. 465.) Since the trial evidence established that the enhancement applied to defendant Equarte, the sentencing court properly augmented his punishment by five years notwithstanding the possible uncertainty created by the prosecution's failure to specify the basis for declaring the current offense a serious felony within the meaning of section 667. (*Id.,* at pp. 466-467.)

The manifest correspondence between subdivision (c)(23) and subdivision (c)(8) dictates a similar resolution of the case at bar. Although arguably

dictum, we find particularly compelling the Supreme Court's conclusion "that in the case of the categories—like subdivision (c)(23)—that apply to 'any felony' if committed in a particular manner, a defendant's conduct may place him into the 'serious felony' classification under a number of different categories." (*Id.,* at p. 465; see also *People* v. *Jackson, supra,* 37 Cal.3d at p. 832, fn. 8.) Subdivision (c)(8), which classifies a "serious felony" as "*any other felony* in which the defendant personally inflicts great bodily injury on any person, other than an accomplice . . . [italics added]" clearly comes within this interpretation. On this basis the court below enhanced appellant's sentence an additional five years; and in light of *People* v. *Equarte* we find no error in this determination.

The original amended information charged appellant with murder and further alleged that he had suffered a prior conviction for robbery, "a serious felony . . . within the meaning Penal Code Section 667(a)." The court found appellant guilty of involuntary manslaughter but still imposed a five-year enhancement because he had personally inflicted great bodily injury in the commission of the crime. The evidence fully supports this finding: The victim suffered massive second and third degree burns and was in pain not only when they were inflicted but constantly for the month preceding her death. Such injuries were anything but "transitory and short-lived" or "trivial, insignificant or moderate." (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 588-589 [146 Cal.Rptr. 859, 580 P.2d 274].) Nor is there any doubt that appellant personally inflicted the injuries. Although he attempted to evade responsibility by explaining that the burns were accidental, he never denied his involvement. Since the record thus demonstrates that he committed involuntary manslaughter in a manner constituting it a "serious felony" within the meaning of section 1192.7, subdivision (c)(8), i.e., by the personal infliction of great bodily injury, we find no sentencing error.

Appellant raises several arguments previously resolved against him in *People* v. *Equarte, supra,* 42 Cal.3d 456. For one, the fact that section 1192.7, subdivision (c), does not specify involuntary manslaughter as a serious felony is of no consequence if the circumstances of the crime otherwise bring it within one of the listed categories.[5] (*Id.,* at pp. 463-464.) Likewise, the prosecution is not required to plead and prove the personal infliction of great bodily injury as a separate enhancement. (*Id.,* at pp. 465-466.) Even if the complaint did not explicitly inform appellant of the basis for claiming his current offense was a serious felony for purposes of section 667, he could have rectified any notice problem by special demurrer. (*Id.,* at pp. 466-467; *People* v. *Thomas* (1986) 41 Cal.3d 837, 843 [226 Cal.Rptr. 107, 718 P.2d 94].)

---

[5] Appellant does not contest that his prior conviction for robbery is a serious felony as specified in section 1192.7, subdivision (c)(19).

Appellant also relies heavily on *People v. Cook, supra,* 158 Cal.App.3d 948, 951, which held that involuntary manslaughter is not a serious felony within the meaning of section 667. We find that decision distinguishable in several respects. First, the substantive analysis and conclusions in *Cook* antedate both *People v. Equarte, supra,* and *People v. Jackson, supra,* and hence must be read in light of the Supreme Court's later explication of the intended scope of section 1192.7, subdivision (c). (See *People v. Arwood, supra,* 165 Cal.App.3d at pp. 174-175.) In particular, we note that the Supreme Court expressly rejected use of "the cardinal maxim of construction, *expressio unius est exclusio alterius*—expression of one thing implies the exclusion of another" (*People v. Cook, supra,* 158 Cal.App.3d at p. 952) in interpreting this statute. (*People v. Equarte, supra,* 42 Cal.3d at pp. 463-464; *People v. Jackson, supra,* 37 Cal.3d at pp. 831-832, fn. 8.) Procedurally as well, any reference in *Cook* to lack of notice probably has been superseded as inconsistent with holdings in *People v. Thomas, supra,* 41 Cal.3d at page 843, and *People v. Equarte, supra,* 42 Cal.3d at pages 466-467. (See *In re Lane* (1962) 58 Cal.2d 99, 105 [22 Cal.Rptr. 857, 372 P.2d 897].)

Second, in *Cook* involuntary manslaughter was alleged as the *prior* serious felony conviction, and the prosecution did not establish any of the circumstances of the crime. Thus, neither at sentencing nor on review did the court have any evidentiary basis for determining the defendant had personally inflicted great bodily injury or for finding the offense constituted a serious felony within the meaning of section 1192.7, subdivision (c)(8). (See also *People v. Cook, supra,* 158 Cal.App.3d at pp. 955-956.) "It is axiomatic that cases are not authority for propositions not considered. [Citation.]" (*People v. Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580].)

Finally, the Court of Appeal rejected involuntary manslaughter as a serious felony in part because it is not specifically enumerated in section 1192.7, subdivision (c), while murder and voluntary manslaughter are. (*People v. Cook, supra,* 158 Cal.App.3d at pages 953-954.) However, this analysis fails to consider the following crucial distinction: Every person convicted of murder or voluntary manslaughter is guilty of a serious felony within the meaning of section 1192.7, subdivision (c)(1), regardless of the nature or extent of his or her participation. By contrast, one convicted of involuntary manslaughter is guilty of a "serious felony" only if he or she *personally* inflicted great bodily injury in the commission of the crime. (See also *People v. Equarte, supra,* 42 Cal.3d at p. 465.) As previously noted, the court in *Cook* did not have an evidentiary basis for examining this distinction since the underlying facts of the defendant's prior involuntary manslaughter conviction had not been established on the record. Hence, its pronouncement "that involuntary manslaughter is not a serious felony

enhancement simply because it results in great bodily injury" (*People* v. *Cook, supra,* 158 Cal.App.3d at p. 953) at best can only be regarded as dictum, which we find unpersuasive in light of more compelling authority and a more substantial evidentiary record.[6]

### DISPOSITION

The judgment of conviction is affirmed in all respects. The petition for writ of habeas corpus is denied.

Danielson, Acting P. J., and Croskey, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 11, 1988.

---

[6] We also note that the Supreme Court in *Equarte* disapproved *People* v. *Bradford* (1984) 160 Cal.App.3d 532 [206 Cal.Rptr. 899], and *People* v. *Sutton* (1985) 163 Cal.App.3d 438 [209 Cal.Rptr. 536], both of which held that assault with a deadly weapon was not a serious felony even if the evidence showed personal use of a deadly weapon. (*People* v. *Equarte, supra,* 42 Cal.3d at p. 465, fn. 12.) Given the direct application of the court's analysis in *Equarte* to the personal infliction of great bodily injury, we express serious doubt that *People* v. *Cook* would survive if the Supreme Court were addressing the question before us today. (Compare *People* v. *Equarte, supra,* 42 Cal.3d at pp. 462-464, with *People* v. *Cook, supra,* 158 Cal.App.3d at pp. 952-955.)